**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD C. AVALOS,

    Plaintiff,

           v.

JO ANNE B. BARNHART,
Commissioner of Social
Security Administration,

    Defendant.
_____/

No. C 04-3218 PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**[1]

    Plaintiff Richard Avalos ("Avalos") seeks judicial review of the Commissioner's final decision denying him disability benefits pursuant to 42 U.S.C. § 405(g). The action is before the court on the parties' cross-motions for summary judgment, and Avalos' alternative motion for remand. Having read the parties' papers and administrative record and having carefully considered their arguments and the relevant legal authority, the court remands this case to the Commissioner for further proceedings in accordance with the court's order.

## BACKGROUND

    This is the second time that Avalos has appeared before this court for review of the Commissioner's decision regarding his Title II Social Security disability insurance benefits ("DIB") application. Avalos applied for DIB on March 21, 2000, alleging disability beginning December 17, 1996, due to a work-related back injury. Avalos was found eligible for Supplemental Security Income (SSI) on psychiatric grounds as of the date of his Title XVI application filed at the same time as his DIB application. However, his Title II

---

[1] Pursuant to Civil Local Rule 7-13, this order may not be cited except as provided by Civil Local Rule 3-4(e).

application for DIB was denied because the Social Security Administration deemed him capable of "do[ing] light work activities and the evidence was insufficient to show severe mental impairment."[2]  Subsequently, Avalos requested and was granted a hearing before an administrative law judge ("ALJ").  The ALJ rendered an unfavorable decision on January 18, 2002, finding Avalos "not disabled," thereby denying his application.  Subsequently, Avalos requested review by the Appeals Council, which denied review.

Thereafter, on May 29, 2002, Avalos filed his first appeal before this court, C02-2575 PJH.  In July 2003, instead of responding to Avalos' motion for summary judgment, the Commissioner stipulated to a remand for further proceedings before an ALJ to re-evaluate Avalos' credibility, re-evaluate lay witness reports, consult a medical examiner regarding Avalos' onset date, and to further develop the record as necessary. On July 10, 2003, this court signed the stipulated order for remand and judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Following remand, the ALJ conducted a re-hearing, and denied Avalos' application on April 12, 2004.  The Appeals Council again denied review.  Subsequently, Avalos filed this second appeal of the ALJ's April 12, 2004, decision on January 28, 2005.

At the time of the second ALJ hearing on March 17, 2004, Avalos was forty-six years old, and had "a high school equivalent education acquired while incarcerated and completed one year of college-level study."  A.R. at 422.  He had been employed in the past as a mechanic, and was working as a janitor at the time of his alleged back injury in December 1996.  As noted, Avalos had been receiving workers' compensation benefits as a result of his successful SSI claim for mental impairment.  Id. 231, 352, 422.

### STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act ("Act") provides for the payment of DIB to people who have

---

[2] Social Security "DIB" is insurance against lost income caused by physical or mental disability.  However, SSI may provide benefits for persons who are not covered by DIB, or who are entitled to DIB in an amount less than that paid under SSI.  Harvey L. McCormick, Scope and Purpose of SSI Benefits, Social Security Claims and Procedures, 5th Ed., § 17.12 (1998).

- 2 -

contributed to the Social Security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423(a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. 20 C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that the claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At the first step, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(b). If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(c). The third step requires the ALJ to compare the claimant's impairment to a Listing of Impairments in the regulations. If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the Listing, the claimant is presumed disabled and is awarded benefits. See 20 C.F.R. § 404.1520(d).

If the claimant's condition does not match the Listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient "residual functional capacity" ("RFC") to perform his past work despite the limitations caused by the impairment(s). See 20 C.F.R. § 404.1520(e). If the claimant cannot perform his past work, at step five, the Commissioner is required to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and past work experience." See 20 C.F.R. § 404.1520(f).

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in his previous occupation. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). If the analysis proceeds to step five, the burden shifts to the Commissioner to demonstrate the claimant can perform other work. Id.

## ALJ'S FINDINGS

Avalos alleged physical disability arising from low back pain and mental disability from depression. A.R. 101, 109, 167, 423. He satisfied the nondisability requirements set forth in Section 216(i) of the Social Security Act, and, thus, was insured for disability benefits through December 31, 1998, his date last insured ("DLI").[3] Id. at 427. However, he was not deemed insured after that date. Id. Accordingly, Avalos was required to demonstrate disability on or before his DLI, December 31, 1998, in order to become eligible for Title II DIB benefits. Id. at 422. At the hearing, the ALJ analyzed Avalos' alleged physical and mental disabilities separately. Id. at 421-28, 652-83.

At the first step in the five-step evaluation, the ALJ analyzed whether Avalos had been performing substantial gainful activity ("SGA"). Id. at 423. Based on evidence in the record concerning Avalos' meager earnings (See id. at 113-22), the ALJ found that Avalos had not been engaged in SGA since his alleged disability onset date[4]. Id. at 423. Neither party contests the ALJ's finding at this step of the evaluation.

Next, the ALJ considered whether Avalos suffered from a severe impairment which significantly limited his physical or mental ability to perform basic work activities. With respect to Avalos' alleged physical impairment of low back pain, Avalos provided the ALJ with medical evidence that chronicled his history of low back injury with chronic low back pain prior to his DLI. Id. at 175-405. Because the ALJ found that the impairment "cause[d] more than minimal effects on Avalos' ability to do work-related activities," the ALJ found it to be severe at Step Two. Id. at 423. Neither party contests this finding, either.

On the other hand, at Step Two, the ALJ did not find Avalos' mental impairment to be severe based on his analysis of the evidence and his credibility assessment.

---

[3] The worker must show a recent connection to the work force (among other requirements) to maintain insured status to receive DIB payments. 42 U.S.C. §§ 423(a)(1) and 423(c); 20 C.F.R. § 404.130.

[4] SGA is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572. Work can be substantial even if less money is earned, and gainful work activity is usually done for pay. Id.

Significantly, the ALJ found Avalos' "medical evidence of an impairment prior to the DLI [to be] minimal." Id. at 424. Although the ALJ acknowledged Dr. Sussman's[5] June 1997 diagnosis of Avalos' dysthymic disorder and difficulty in functioning, the ALJ nevertheless found Avalos' GAF score of 65[6] to indicate Avalos' capability of "functioning pretty well." Id. at 425. Moreover, the ALJ found little evidence of psychiatric treatment until February 2000, the time at which Avalos began to see Dr. Stolzman (his general practitioner at the VA Mental Health Clinic). Id. at 253-74, 425. The ALJ made this finding despite evidence that during the time prior to February 2000, Dr. Spencer (Avalos' treating physician at Native American Health Center) (Id. at 313-63, 396-405) had indeed been treating Avalos' depression and anxiety since October 1995, a medical history to which the ALJ did acknowledge. Id. Nonetheless, the ALJ stated that Dr. Spencer "failed to establish any significant psychiatric limitations." Id. Finally, the ALJ stated that the state agency medical consultants did not find any severe mental impairment prior to Avalos' DLI. Id.

Similarly, in assessing Avalos' credibility, the ALJ found little evidence of severe mental impairment prior to Avalos' DLI. Id. at 425. The ALJ relied on the hearing testimony of the Commissioner's nonexamining psychiatrist, Dr. Shapiro, to conclude that throughout the entire period from December 1995 until approximately January 31, 2000, there were insufficient medical records to support a finding of a severe mental impairment. Id. The ALJ indicated that Dr. Shapiro noted that the only records available for the period prior to Avalos' DLI were the worker's compensation records, which stated a GAF score of

---

[5] Dr. Spencer (Avalos' treating physician) referred Avalos to Dr. Sussman, Clinical Psychologist, for a one-time medical examination.

[6] Global Assessment of Functioning ("GAF") is a scoring scale within a multiaxial assessment system that provides a domain of information to help the clinician plan treatment and predict outcome. A score in the range of 60-70 would indicate that the patient has "some mild symptoms." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 25, 32 (4th ed. 1994).

65.[7]  Id.  The ALJ added that Dr. Shapiro noted that this score was inconsistent with a disabling impairment.  Id.  Moreover, the ALJ found Dr. Shapiro's opinion regarding Avalos' history of depression and Dr. Spencer's prescribed medication for Avalos' depression to be insufficient for a diagnosis of depression.  Id.  Finally, the ALJ indicated that Dr. Shapiro's diagnosis of Avalos' severe mental impairment in 2000 could not relate back to the earlier pre-DLI period.[8]  Id.

The ALJ also considered the March 1999 state agency reports.  Although the ALJ "d[id] not dispute that [Avalos] had a disabling mental impairment in January 1999," he did not find the impairment to relate back to the period prior to Avalos' DLI.  Id. at 382, 425-26.

Additionally, the ALJ considered other factors, such as subjective symptoms, in assessing Avalos' credibility, but gave them no weight because they did not relate back to the period before Avalos' DLI either.  Id. at 123-32, 425.  For the above reasons, the ALJ did not find that, prior to Avalos' DLI, his alleged physical or mental impairments were either credible or severe.  Id. at 426.

At the third step, the ALJ did not find Avalos' physical or mental impairments to have met the severity of any medical condition contained in the regulation's Listing of Impairments.  See 20 C.F.R. § 404.1520(d).  With respect to Avalos' physical impairment, the ALJ found no documentation or evidence in the record that would have met the Listing's physical impairment criteria.  Id. at 423, 661.  Moreover, because Avalos' attorney made no arguments and conceded this issue, the ALJ did not find disability at this step.  Id. at 172-74, 423, 661.  Neither party contests this finding today.

At the fourth step, the ALJ found Avalos to lack residual functional capacity ("RFC")

---

[7] The ALJ was referring to Dr. Sussman's examination conducted in May 1997, prior to Avalos' DLI of December 1998.  Id. at 182, 677-78.  However, Dr. Shapiro also considered Avalos' medical treatment prior to Avalos' DLI with Dr. Spencer, his treating physician.  Id. at 666.

[8] Dr. Shapiro appeared to have been under the impression that Avalos' DLI was 1996, rather than December 1998.  Id. at 662, 666-68.

- 6 -

due to his physical limitations to perform medium-level exertion as would have been required by his past work. Id. at 424, 427. The ALJ found minimal evidence in the record to substantiate Avalos' claim of physical impairment. Id. at 424. The ALJ reviewed medical opinions and symptoms in making this finding. Id. He noted that in January 1997, Dr. Wiesner of Kaiser Permanente treated Avalos after he injured his low back. Id. at 175, 424. The ALJ also noted that Dr. Wiesner recommended physical therapy and predicted Avalos' return to work in nine days. Id.

The ALJ noted the following evidence in support of his finding that Avalos did not have any physical impairment. After Avalos participated in physical therapy, he reported a decrease in pain. Id. at 178, 424. Also, in April 1997, Dr. Spencer, Avalos' treating physician, found: (1) no limitations in Avalos' ability to walk or stand; (2) his ability to lift up to 25 lbs.; (3) his ability to sit or drive for one half hour at a time; and (4) his ability to occasionally bend, squat, or kneel. Id. at 346, 424. She found him able to return to "light duty" days later. Id. at 347, 424. Subsequently, in May 1997, she found his back condition stable and labeled him fit to pursue vocational rehabilitation. Id. at 340, 342, 424. Moreover, the state agency medical consultants concluded that Avalos was physically able to perform a full range of light work activities. Id. at 231, 424.

Moreover, the ALJ noted that Avalos had received only a minimal amount of treatment with physical therapy. Id. at 424. He further stated that Avalos' doctors did not consider his injury a permanent disability, and they anticipated Avalos' prompt return to work. Id. at 175, 347. The ALJ also found that Avalos' daily activities were not limited by his back condition. Id. at 145-56, 185. For these reasons, the ALJ found Avalos' credibility and testimony to be unpersuasive with respect to his alleged physical limitations. Id. at 424.

However, taking into account Avalos' RFC as affected by Avalos' physical capability for light work, the ALJ ultimately concluded that Avalos "was unable to do his past relevant work as an automobile mechanic" because the past work would have required medium-level exertion. Id. at 426.

At the fifth step, the ALJ demonstrated through consideration of Avalos' RFC, age, education, and past work experience that Avalos could have performed a full range of light work that had existed in the national economy. With this, the ALJ found that Avalos was not disabled at the fifth step, and therefore not disabled under Title II.

## DISCUSSION

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review final decisions of the Commissioner of Social Security. The ALJ's ruling must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. Id.

### B.   Issues

Avalos seeks reversal of the Commissioner's denial of Social Security disability benefits, arguing as follows:

(1) the ALJ's finding that Avalos did not have a severe mental impairment prior to Avalos' DLI at Step Two was not supported by substantial evidence, and the ALJ improperly discounted Avalos' credibility regarding his mental impairments;[9]

(2) the ALJ failed to adhere to the prescribed procedures for determining the onset date of Avalos' mental impairment;

(3) the ALJ improperly excluded consideration of Avalos' mental impairments from his RFC analysis at Step Four;

(4) the ALJ improperly applied the rules in the Medical-Vocational Guidelines ("grids") at Step Five; and

---

[9] Avalos challenges the ALJ's credibility determination regarding his mental impairments only.

- 8 -

(5) the ALJ failed to follow the court's remand order.

In the cross-motion, the Commissioner argues that the ALJ's decision should be upheld because it is supported by substantial evidence.

**C.     Analysis**

      **1.     The ALJ's Finding of No Severe Mental Impairment Is Not Supported by Substantial Evidence**

           **a.     The ALJ Failed to Provide Specific, Legitimate Reasons for Discounting Avalos' Examining Physician's Opinions**

Avalos contends that the ALJ improperly disregarded the medical opinion of one of his examining physicians, Dr. Sussman. Avalos claims Dr. Sussman's opinion provided evidence of longstanding mental impairments with very significant limitations that would substantiate a finding of severe impairment. Avalos argues that the ALJ failed to set forth specific, legitimate reasons for disregarding those aspects of Dr. Sussman's opinion. Moreover, he claims that his examining physician's opinion was entitled to controlling weight despite the contradictory assessments by nonexamining physicians, Drs. Shapiro and Brodzinsky, and the inconsistencies between Dr. Sussman's opinion and the nonexamining physicians' objective medical findings. On the other hand, the Commissioner contends that the ALJ was entitled to resolve any inconsistency between medical reports with respect to the finding of a severe mental impairment.

Ninth Circuit case law distinguishes amongst the weight to be accorded to the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians) and (3) those who neither examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, an examining physician's opinion is entitled to greater weight than a nonexamining physician regarding a claimant's medical disability. Id. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of the examining physician. If a discrepancy exists between the opinions of the different physicians, the ALJ may discount a physician's opinion by setting forth "specific

and legitimate reasons" based upon substantial evidence. Id. at 830-31. The ALJ can fulfill his responsibility by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999).

Here, Dr. Sussman, Avalos' examining physician in 1997, stated his opinion that Avalos' condition was "strongly suggestive of a longstanding preexisting personality disorder, Depressive type," while Avalos' "personality scales show[ed] a chronic pattern of moderate depression [ ] characterized by long-term symptoms [ ] that have progressed over the years." A.R. 195, 198. Moreover, "his disorder ha[d] played a major role in his psychiatric disability." Id. at 198. Because he was an examining physician, Dr. Sussman's opinion was entitled to greater weight than the opinions of Drs. Shapiro and Brodzinsky.[10] The ALJ not only failed to provide the requisite specific and legitimate reasons for rejecting the gravity and materiality of Dr. Sussman's findings, he failed to address Dr. Sussman's opinions entirely. Thus, the ALJ erred in rejecting Dr. Sussman's opinion without providing the reasons for doing so. See, e.g., Lester v. Chater, 81 F.3d at 831 (finding that the Commissioner erred when he rejected the opinion of the examining physician in favor of a nonexamining physician without providing "specific and legitimate reasons" supported by substantial evidence in the record).[11]

### b. The ALJ Failed to Provide Specific, Legitimate Reasons for Rejecting Avalos' Treating Physician's Opinion

Avalos argues, based on three Ninth Circuit cases, that when the ultimate question

---

[10] Drs. Shapiro and Brodzinsky, the nonexamining physicians who reviewed portions of Avalos' medical record seemingly for the first time at the hearing, found no evidence of severe mental impairment. Id. at 662, 664.

[11] It appears that the ALJ may have discounted Dr. Sussman's opinion because it was issued in 1997, one year after Avalos' alleged 1996 DLI, as testified to by Dr. Shapiro. Id. at 662, 664. However, for the reasons discussed later in this order, the ALJ's reliance on the 1996 DLI was in error.

- 10 -

of a claimant's disability turns on the degree of impairment, a treating physician's medical opinion may not be disregarded by the ALJ.  See Sprague v. Bowen, 812 F.2d 1226 (9th Cir. 1987); Winans v. Bowen, 853 F.2d 643 (9th Cir. 1987); Hammock v. Bowen, 879 F.2d 498 (9th Cir. 1989).  The Ninth Circuit, however, ruled in all of these cases that a treating physician's opinion may be rejected so long as the ALJ cites specific, legitimate reasons based on substantial evidence in the record.  See Sprague, 812 F.2d at 1230; Winans, 853 F.2d at 647; Hammock, 879 F.2d at 502.  In each of these cases, the reviewing court found that the ALJ either failed to note any specific reasons at all for rejecting the treating physician's opinion or made inadequate references to the treating physician's findings without providing legitimate reasons for rejecting those findings.  See Sprague, 812 F.2d at 1231; Winans, 853 F.2d at 647; Hammock, 879 F.2d at 502.

Dr. Spencer, Avalos' treating physician, documented a long history of Avalos' battle against depression that dated back as early as 1995.  Dr. Spencer found that Avalos' depression was exacerbated by his low back pain, was related to his injury, and was acute.  A.R. at 344, 350, 360.  However, the ALJ, without citing any specific, legitimate reasons based on substantial evidence in the record, discounted Dr. Spencer's six-years' worth of material medical diagnoses with the single conclusory finding that the doctor "failed to establish any significant psychiatric limitations."  Id. at 425.   Thus, the ALJ erred by failing to cite specific reasons for rejecting the treating physician's opinion.

### c. The ALJ Failed to Provide Specific, Legitimate Reasons for Discounting Avalos' Credibility

Avalos also contends that the ALJ erred in rejecting his testimony regarding his mental condition prior to his DLI.  While the ALJ is responsible for determining credibility, the ALJ's findings "must be supported by specific, cogent reasons."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Also, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Id.

Here, the evidence supported a finding that Avalos had a mental impairment prior

- 11 -

to his DLI.  Avalos' testimony included many accounts of his mental impairments prior to his DLI (A.R. 35-57, 671-678).  He described that he had trouble being around others and trusting them (Id. at 674) and had heard voices coming from the television when it was not even powered (Id. at 41).  Moreover, Dr. Sussman's report in 1997 was available to confirm many of Avalos' statements particularly those regarding Avalos' lackluster power to concentrate and his depressed mood.  Id. at 189.  Accordingly, Avalos provided sufficient evidence such that the ALJ was duty-bound to provide "specific, cogent reasons" for rejecting Avalos' testimony.  The ALJ's general finding that Avalos' statements described his condition after, as opposed to before, his DLI does not suffice.

Moreover, absent affirmative evidence of malingering, the ALJ can reject the claimant's testimony regarding the severity of his symptoms only by offering clear and convincing reasons.  Reddick, 157 F.3d at 722.  Evidence that can be considered in evaluating a claimant's credibility includes inconsistencies in the claimant's testimony, the extent of the claimant's daily activities, observations of physicians, or any unexplained failure to follow a course of prescribed treatment.  Bunnell, 947 F.2d at 346.

Here, the ALJ did not find malingering or discredit Avalos' testimony in its entirety.  A.R. 650-84.  Rather, the ALJ even suggested that he would consider "th[e] claimant [as] being credible, as credible as he [could have been]." Id. at 679.  Nonetheless, the ALJ rejected Avalos' testimony regarding his mental health because it "d[id] not relate to the period at issue, [and] gave them no weight." Id. at 425, 426, 669-70.  Furthermore, the ALJ simply concluded that the impairments prior to Avalos' DLI were not credible.  Id. at 426.  Additionally, the ALJ erroneously concluded that the relevant case law or Social Security Rulings did not require him to list reasons and factors in rejecting a claimant's credibility.  To the contrary, Ninth Circuit law requires such specificity.  See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (citing Lester, 81 F.3d at 834) (ALJ must provide specific, cogent reasons in discounting claimant's credibility regarding his impairments).

  **2.  The ALJ Improperly Determined the Onset Date of Avalos'**

**Mental Impairment**

Avalos also contends that the ALJ erred when he determined his disability onset date without seeking the assistance of a medical advisor. In evaluating the state agency medical consultants' psychological examination, the ALJ stated that he did "not dispute that [Avalos] had a disabling mental impairment in January 1999." A.R. 426. Because the ALJ accepted Avalos' mental impairment as of that date, it is reasonably inferred that the ALJ would have found a severe mental impairment but for the fact that the January 1999 examination took place after Avalos' DLI of December 1998. Id.

According to Social Security Ruling 83-20, the ALJ must call upon a medical advisor to determine the disability onset date when the medical evidence is not definite concerning the date and medical inferences have to be made. SSR 83-20; Armstrong v. Comm'r of the Soc. Sec. Adm., 160 F.3d 587, 590 (9th Cir. 1998). Here, the onset date was not clear, and the ALJ was required to make certain inferences. He was thus required to consult a medical advisor before doing so. It does not appear that the ALJ consulted an advisor, as argued by the Commissioner;[12] instead, the ALJ's decision suggests that he made the onset date determination based on Avalos' state agency medical consultation. For this reason, the ALJ's determination contravenes the prior stipulated remand order which required him to consult a medical advisor to assist in making this determination. A.R. at 493.

### 3. The ALJ Improperly Excluded Consideration of Avalos' Mental Impairments from His RFC Analysis

Avalos also contends that the ALJ erred when he failed to review the limiting effects of all of Avalos' impairments, both severe and non-severe, and both physical and mental, in

---

[12] Although the Commissioner contends that Dr. Shapiro acting in the capacity of a medical advisor had indeed offered his services and testified, Dr. Shapiro made no determination of a disability onset date because he found no mental impairment prior to the erroneous DLI. Thus, the ALJ inferred Avalos' disability onset date of January 1999 on his own, without the assistance of a medical advisor, which was at odds with SSR 83-20, Ninth Circuit case law, and this court's prior remand order.

his RFC findings.

When the applicant has a severe impairment, but the symptoms, signs, and findings do not meet those of a listed impairment, the ALJ is required to consider the limiting effects of <u>all</u> impairments in the RFC determination.  20 C.F.R. § 404.1545(e) (emphasis added).  The RFC assessment must address the remaining nonexertional capacities that include all work-related mental limitations and restrictions.  S.S.R. 96-8p.

Here, however, the record reveals that the ALJ did not properly assess Avalos' RFC or consult the medical examiner, Dr. Shapiro, regarding Avalos' RFC based on a combination of Avalos' low back pain and depression.  Instead, in his decision, the ALJ relied only upon Avalos' severe physical impairment caused by his low back injury, <u>id.</u> at 423, 426, and did not consider Avalos' depression, despite acknowledging the mental impairment in his assessment of Avalos' credibility at Step Two.  <u>Id.</u> at 426.  Nor could this court locate any discussion of the combined effects of Avalos' mental and physical impairment on his RFC and ability to perform other work, in the pertinent hearing transcripts.  <u>Id.</u> at 652-83.  The ALJ thus erred by failing to consider the collective impact of Avalos' impairments.  <u>Id.</u> at 421-28; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 793 (9th Cir. 1997) ("In determining [the claimant's] residual functional capacity, the ALJ must consider whether the aggregate of [the claimant's] mental and physical impairments may so incapacitate him that he is unable to perform available work."); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290-91 (9th Cir. 1996) (holding ALJ committed reversible error by not only failing to consider whether combination of impairments was "severe" at step two, but also failing to consider how combination of impairments affected the claimant's RFC).

### 4. The ALJ Improperly Applied the Rules in the Medical-Vocational Guidelines ("Grids")

Avalos further argues that the ALJ improperly applied the rules in the Medical-Vocational Guidelines ("grids").

Under the regulations, once a claimant has established that a severe impairment

- 14 -

prevents him from doing his previous work, the burden shifts to the Commissoner at step five to demonstrate that the claimant can perform other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education and work experience. 20 C.F.R. § 404.1560(b)(3). The ALJ can meet this burden by using the grids at 20 C.F.R. pt. 404, subpt. P, app. 2, or by relying on the testimony of a vocational expert ("VE"). See, e.g., Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

The grids present a short-hand method to resolve individual claims that involve standardized levels of impairment, taking into account a claimant's age, education, and the transferability of a claimant's vocational skills, if any. Id. The grids categorize jobs by their physical-exertion requirements and consist of a series of three tables: one for claimants who can perform "sedentary work," 20 C.F.R. pt. 404 subpt. P, app. 2, table 1; one for claimants who can perform "light work," id. table 2; and one for claimants who can perform "medium work," id. table 3. Use of the grids encourages the uniform treatment of claims and promotes efficiency. Tackett, 180 F.3d at 1101. However, the grids are to be used only where they "completely and accurately describe the claimant's abilities and limitations." Id. at 1101-02 (citing Desrosiers v. Sec'y of HHS, 846 F.2d 573, 577-78 (Pregerson, J., concurring) (9th Cir. 1988). When the grids do not fully describe a claimant's limitations, the ALJ must rely on the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

Moreover, Ninth Circuit law suggests that the existence of significant non-exertional impairments make an ALJ's reliance on the grids inappropriate. Desrosiers, 846 F.2d at 578. However, the fact that non-exertional limitation is alleged does not automatically preclude application of the grids. Id. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. Id.

In this case, the ALJ failed to address whether Avalos' mental limitations significantly limited the range of work permitted by his physical exertional limitations. Because the ALJ failed to evaluate the medical evidence properly before deciding whether

the use of the grids would be appropriate, the ALJ's reliance on the grids was inappropriate.

### 5. The ALJ Failed to Follow the Court's Remand Order

Avalos claims that the stipulation and court order required the Commissioner to reevaluate his credibility and to consult a medical expert to help determine the disability onset date. As discussed above, the ALJ failed to complete both of these tasks.

## CONCLUSION

For the reasons set forth above, the court finds that the ALJ erred. Although Avalos requests reversal of the Commissioner's decision and an award of benefits, because the record is incomplete, the court finds that remand is appropriate. Because the ALJ clearly did not fulfill his responsibilities under the first stipulated order of remand, the Commissioner is advised that the court expects her full compliance with this order. Accordingly, Avalos' motion for summary judgment and/or remand is GRANTED. The Commissioner's cross-motion for summary judgment is DENIED. On remand, the ALJ must:

1. Reconsider the testimony of Avalos, his treating physician and his examining physician, and accord them the proper weight and if their testimony is again rejected, articulate specific cogent reasons for the rejection;
2. Consult a medical advisor before re-determining the onset date of Avalos' mental impairment;
3. Re-assess Avalos' RFC afer considering the collective impact of Avalos' impairments;
4. Make appropriate medical findings regarding Avalos' mental impairment before employing the vocational grids;
5. Consider all of the relevant evidence pertaining to Avalos' mental health prior to Avalos' correct DLI.

This order fully adjudicates the motions listed at nos. 14 and 19 of the clerk's docket for this case. The clerk shall close the file.

1  **IT IS SO ORDERED.**

3  Dated: September 30, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge